# IN THE UNITED STATES DISTRICT COURT FOR
# THE SOUTHERN DISTRICT OF WEST VIRGINIA

## HUNTINGTON DIVISION

HARDIN STREET MARINE LLC,

          Plaintiff,

v.                                    CIVIL ACTION NO. 3:18-1181

KENOVA TERMINAL COMPANY,

          Defendant.

## MEMORANDUM OPINION AND ORDER

Pending before the Court is the Motion for Summary Judgment filed by Plaintiff Hardin Street Marine LLC, and the Motion for Declaratory and Summary Judgment filed by Defendant Kenova Terminal Company.[1] ECF Nos. 16, 20. This case arises from a dispute about the meaning of an "option to purchase" clause in a lease agreement between the parties. *See Compl.*, ECF No. 1, at 1. Plaintiff argues that the option to purchase clause allows it to purchase the premises at issue at *any point* during the lease, provided that it gives Defendant a 30-day notice from that point. *See Mem. in Supp. of Pl.'s Mot. for Summ. J.*, ECF No. 21, at 1–2. However, it is Defendant's position that the option to purchase clause only allowed Plaintiff to purchase the premises *the day the term of the lease commenced*, provided that it gave Defendant a 30-day notice from that day—which Plaintiff did not do. *See Mem. in Supp. of Def.'s Mot. for Summ. J.*, ECF No. 17, at 1. Predictably, both parties argue that the lease agreement terms "unambiguously" support their position. *Id.*; *Mem. in Supp. of Pl.'s Mot. for Summ. J.*, at 1.

---

[1] Defendant has asserted a counterclaim against Plaintiff, and therefore is also a counterclaim plaintiff. *See* ECF No. 15, at 8.

The parties have fully briefed the issues and the motions are now ripe for adjudication. As explained below, the Court **DENIES** Plaintiff's Motion for Summary Judgment, and **GRANTS** Defendant's Motion for Declaratory and Summary Judgment.

**I. Background**

On October 1, 2000, Plaintiff's predecessor in interest, Marathon Ashland Petroleum LLC, the lessee, and Defendant, the lessor, entered into a lease agreement for approximately 70 acres of land bordering the Ohio River in Wayne County, West Virginia. *Compl.*, at 2. While the lease agreement was effective October 1, 2000, the 25-year lease term did not commence until July 1, 2008. *See Lease Agreement*, ECF No. 1-1, at 1. Section 36 of the lease provides:

> **OPTION TO PURCHASE**: … provided that Tenant is not then in default of any term or provision under this Agreement and Indenture of Lease, Landlord hereby grants and gives to Tenant the option to purchase the Premises, at the time the Term of this Lease shall commence, for the purchase price of Four Million Dollars ($4,000,000), as such purchase price may be adjusted as herein provided, and provided Tenant gives Landlord 270 days written notice of its intention to exercise this option on or before October 1, 2007.

*Id.* at 22.

Section 36 of the lease also sets forth a formula for the adjustment of the base purchase price of $4,000,000 in order to account for inflation. *See id.*

On September 28, 2007, three days before Defendant's option to purchase was set to expire, Marathon Petroleum Company LLC—another one of Plaintiff's predecessors in interest—and Defendant amended the lease. *See Amended Lease Agreement*, ECF No. 1-2. Section 2 of the amended lease provides:

> **OPTION TO PURCHASE**: …provided that Tenant is not then in default of any term of provision under this Agreement and Indenture of Lease, Landlord hereby grants and gives to Tenant the option to purchase the Premises, at the time the Term of this Lease shall

> commence, for the purchase price of Four Million Dollars ($4,000,000), as such purchase price may be adjusted as herein provided or by mutual agreement of Landlord and Tenant, and provided that Tenant gives Landlord 30 days written notice of its intention to exercise this option.

*Id.*

Consequently, the amendment made two relevant changes. First, it changed the 270-day notice requirement to a 30-day requirement. Second, it removed the language specifying what date this notice requirement falls on.

Following the execution of the amendment, Marathon Petroleum Company LP became the successor of Marathon Petroleum Company LLC, and Marathon Petroleum Company LLC's rights under the Lease transferred to Marathon Petroleum Company LP. *See Compl.*, at ¶ 15. On January 1, 2015, Marathon Petroleum Company LP assigned its rights under the Lease to Plaintiff. *See id.* at ¶ 17. By letter dated June 26, 2018, Plaintiff gave notice to Defendant of its exercise of the option to purchase the premises for $5,561,600.[2] *See id.* at ¶ 20. Defendant, however, refuses to sell the premises at this price, and argues that it is not required to do so, because Plaintiff's option to purchase the land required Plaintiff to give Defendant a 30-day notice *before the lease term began*—which Plaintiff did not do. *See id.* at ¶ 20; *Mem. in Supp. of Def.'s Mot. for Summ. J.*, at 1. Plaintiff subsequently filed its complaint on July 25, 2018. ECF No. 1.

**II. Standard of Review**

To obtain summary judgment, the moving party must show that no genuine issue as to any material fact remains and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, a court will not "weigh the evidence and determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

---

[2] This amount was allegedly calculated after starting with the agreed upon base purchase price of $4,000,000 and making the agreed upon adjustments set forth in Section 36 of the lease. *See Compl.*, at ¶ 20.

Instead, a court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986). Any inference, however, "must fall within the range of reasonable probability and not be so tenuous as to amount to speculation or conjecture." *JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001) (citation omitted). Therefore, summary judgment will not be granted if a reasonable jury could return a verdict for the non-moving party on the evidence presented. *See Anderson*, 477 U.S. at 247–48.

**III. Discussion**

As stated above, both parties argue that they are entitled to summary judgment based upon their own interpretation of the "option to purchase" clause in the lease agreement. Because the Court finds that the premises could only be purchased on the day the lease commenced, and that notice must have been given 30 days beforehand, the Court agrees with Defendant's interpretation of the lease agreement.

"A valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction …." *Zimmerer v. Romano*, 679 S.E.2d 601, 610 (W. Va. 2009) (internal quotations omitted). However, when a *phrase* in a contract *is* ambiguous, a court may "endeavor to ascertain the intended meaning of the ambiguous phrase" by viewing the phrase "in the context of the whole agreement," because the "language of a lease agreement … must be considered as an integrated whole, giving effect, if possible, to all parts of the instrument." *Moore v. Johnson Service Co.*, 219 S.E.2d 315, 318–320 (W. Va. 1975). To be clear, a phrase in a contract that is ambiguous before applying this established rule of construction does not render the *contract* ambiguous. Rather, a contract is ambiguous only "when it is reasonably susceptible to more than one meaning in light of the surrounding circumstances and

*after* applying the established rules of construction." *Coleman v. Sopher*, 499 S.E.2d 592, 602 (W. Va. 1997) (citing *Williams v. Precision Coil, Inc.*, 459 S.E.2d 329, 342 n. 23 (1995)) (emphasis added). This distinction is crucial, because only when a court determines that a *contract* is ambiguous "can a question of fact be submitted to the jury as to the meaning of the contract." *Pilling v. Nationwide Mut. Fire Ins. Co.*, 500 S.E.2d 870, 872 (W. Va. 1997) (internal citations omitted).

The Court holds that the lease agreement "expresses the intent of the parties in plain and unambiguous language," and is therefore "not subject to judicial construction." The lease, which was signed on October 1, 2000, states that "a Portion of the Premises are currently leased by Landlord to West Virginia Terminals, Inc.," and that the term of that lease "will expire on June 30, 2008." *Agreement*, at 1. As a result, the agreement provided that the term of the lease between the parties would commence the day after the lease with West Virginia Terminals expired—July 1, 2008. Further, the original agreement, as well as the amended agreement, explicitly stated that, "*at the time* the Term of this Lease shall commence"—July 1, 2008—the tenant had the "option to purchase the Premises." *Id.* at 22. Thus, the language of the lease is plain and unambiguous. The lease commenced on July 1, 2008, and therefore Plaintiff had the option to purchase on July 1, 2008. Plaintiff now is attempting to exercise its option to purchase on a day other than July 1, 2008, which the lease unambiguously does not allow for.

Even *if* the Court assumes that ambiguous phrases exist in this lease agreement, the ambiguity is eliminated when examining the phrases "in the context of the whole agreement." The potentially ambiguous phrases that are at the center of this dispute are the connected provisions in the amended lease which state that the tenant has the option to purchase the premises "at the time the Term of this Lease shall commence," and that the tenant must give the landlord "30 days

written notice." These phrases are arguably ambiguous because it is not explicitly stated whether "at the time" means "*beginning* at the time" or "*only* at the time," and therefore it may not be clear whether "30 days written notice" refers to *any point after* the lease begins, or *from the day* the lease begins. Plaintiff, of course, argues the former, and Defendant argues the latter. Fortunately, there are facts in the agreement that resolve this possible ambiguity, and demonstrate that "at the time" means "*only* at the time," and that "30 days written notice" requires notice to be given from the date the term of the lease began.

First, the significance of the *original* agreement's specified number of days that notice must be given, combined with the specified date notice must be given, resolves any potential ambiguity in the amended agreement. In the original lease, the tenant was required to give the landlord at least "270 days written notice" of its intention to purchase, but the original agreement clarified that to give at least 270 days of notice, notice must be given "on or before October 1, 2007"—approximately 270 days before the lease term commenced. This requirement necessarily means that "270 days written notice" must be interpreted as "270 days written notice *before the lease term commenced*."[3] Therefore, the provision in the original agreement that stated the tenant has the option to purchase the premises "at the time" the term of the lease commenced must have meant "*only* at the time." Crucial to note, none of these facts are in dispute. Thus, it must be Plaintiff's position that these phrases—"at the time" and "written notice"—indisputably had one meaning in the original agreement, but indirectly changed their meaning in the amended agreement merely because a specified date was removed. The Court finds this position unreasonable.

Second, even if the facts above were not enough to clarify any ambiguity, the language in the contract which discusses price provides additional support. In the second paragraph of Section

---

[3] After all, if "270 days written notice" meant that 270 days written notice could be given from a date *during* the lease, notice could not also be given "on or before October 1, 2007."

36 of the agreement, there is a provision which states how the parties will account for inflation: the purchase price will be multiplied by the amount that the "Index" exceeds the "Base Index." *Agreement*, at 22. Crucially, the contract calls for the "Index" to be the one "published for the month which is ninety (90) days *prior to the commencement of the Term of the Lease* …." *See id.* (emphasis added). Thus, in order to account for inflation, the parties essentially agreed that, if the option to purchase was exercised, the purchase price of $4,000,000 in October of 2000 would be adjusted to its equivalent value 90 days before July 2008. This agreement to account for inflation down to the very month, and around the time the lease term began, is further proof that the parties agreed, and understood, that any purchase would have to occur *only* at the time the term of the lease commenced, and any notice must occur beforehand. To hold otherwise would accept that the parties were diligent enough to account for whatever inflation may exist *up until* the lease began, but, for no understandable reason, completely ignored the decades of inflation that would occur *after* the lease began. This is also an unreasonable position to take.

Despite the above facts, Plaintiff argues that its interpretation is the only one that harmonizes the relevant provisions of the lease, and points to one example to prove this: a provision which states that the option to purchase can only be exercised if the "Tenant is not then in default of any term or provision under this Agreement and Indenture of Lease…" *See Mem. in Supp. of Pl.'s Mot. for Summ. J.*, at 7; *Agreement*, at 22. Plaintiff argues that, "[b]ecause the Term of the Lease … and Tenant's performance obligations thereunder …. did not commence until July 1, 2008, it would not have been possible for Tenant to be in default prior to that date." *See Agreement*, at 22. Therefore, Plaintiff argues, this Court "should interpret the Lease to provide that the Option could only be exercised after it became possible for Tenant to be in default, i.e., after

the commencement of the Lease Term." *See id.* at 22–23. Unfortunately, these assertions and arguments are fatally flawed.

Plaintiff is completely incorrect that "it would not have been possible for Tenant to be in default" prior to July 1, 2008, because Plaintiff had performance obligations that began the day the agreement was made, October 1, 2000. For example, the lease states that the tenant was required to make monthly prepayments of $1,000 commencing October 1, 2000, and continuing through June 2008. *See Agreement*, at 3. Thus, if the tenant failed to make any of these payments, which were all due prior to July 1, 2008, the tenant would not be entitled to exercise the option to purchase. Because of this fact, Plaintiff is incorrect in asserting that Defendant's interpretation of the contract does not harmonize the relevant provisions of the lease. For this reason, and the additional reasons stated above, the Court holds that the option to purchase under the lease expired on June 1, 2008, Plaintiff's notice dated June 26, 2018, was ineffective and an legal nullity, and Defendant has no contractual obligation to sell the property to Plaintiff.

## IV. Conclusion

Based upon the analysis provided above, the Court **DENIES** Plaintiff's Motion for Summary Judgment (ECF No. 20), and **GRANTS** Defendant's Motion for Declaratory and Summary Judgment (ECF No. 16).

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: May 22, 2019

_____
ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE